## Sawtelle's Appeal.

1. If there was sufficient competent testimony before an auditor to sustain his finding of fact and this finding is approved by the Orphans' Court, this court will not reverse because of the auditor's admission of some incompetent testimony unless it is shown he was led thereby into some specific error.

2. Where a married woman gives a bond and mortgage or a judgment to secure the purchase-money of real estate conveyed to her, they may be enforced against the land, on the equitable principle that she cannot withhold the price and retain the land, but they are not such personal obligations as will entitle the holders to participate in the distribution of the married woman's estate in the hands of her administrator.

3. To bind a married woman's separate estate for medical services rendered herself and family it must be shown that they were rendered at her request and on her credit.

May 15th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Appeal from the Orphans' Court of *Cumberland county:* Of May Term 1877. No. 211.

Mary S. Sawtelle died in 1871, seised of two tracts of land and leaving certain personal property, a daughter, Eva A., married to J. J. Cart, and her husband, Nathaniel H. Sawtelle. Letters of administration were granted to the latter on the estate of the decedent. He filed no inventory, but in 1874 filed a first account, wherein he charged himself as follows : " Amount judgments, notes and accounts on hand $2346." Mrs. Cart excepted to this account, alleging that accountant had not charged himself with the entire estate, and the account and exceptions were referred to an auditor. Before the auditor there was evidence that at the time of her decease Mrs. Sawtelle had as her separate property in her possession, $2790 in government bonds and cash (this evidence will be found substantially in the opinion of this court), and Mrs. Cart was brought before the auditor to prove certain declarations made by the decedent in her lifetime in reference to her ownership of said bonds and cash. The accountant objected to this testimony for the reason that Mrs. Cart was incompetent to prove said declarations of her mother and that the presumption of law was against such ownership. The auditor admitted the evidence and reported that the administrator should be surcharged with the bonds and cash, and after re-stating the account found the balance in the hands of the accountant to be $3002.20. Out of this balance, " on the ground that the personal property is the primary fund liable, so as to relieve the realty," the auditor allowed the claim of R. Givin upon a mortgage executed by the decedent, during coverture, of one tract of her real estate, to secure a balance of purchase-money due thereon, and the claim of the First National Bank of Carlisle on a judgment bond executed by the decedent alone, during coverture, to secure a balance of purchase-money. He also allowed the claims of

[Sawtelle's Appeal.]

Mrs. Dr. Hall and Dr. Dale for medical services rendered the decedent and reported that the balance should be distributed equally between Eva, the daughter, and the husband of the decedent.

The administrator excepted to this report, alleging that the auditor erred in permitting Eva Cart to testify to matters which occurred during the decedent's lifetime, in surcharging the accountant and in allowing the above claims. The court dismissed the exceptions and from this decree this appeal was taken by the administrator.

*J. M. Weakley* and *Francis Jordan*, for appellant.—The administrator should not have been surcharged upon the testimony given, as it was neither competent nor sufficient. Under the Act of 1848 the decisions are numerous, commencing with Gamber *v.* Gamber, 6 Harris 366, that the wife must show by evidence that does not admit of a reasonable doubt, either that she owned the property at marriage, or else acquired it afterwards by gift, bequest, or purchase, and that the burden is on her to prove distinctly that she paid for it with funds that were not furnished by her husband. The bond and mortgage were not entitled to any part of this fund for distribution ; their remedy was against the land : Keiper *v.* Helfricker, 6 Wright 325 ; Steinman *v.* Ewing, 7 Id. 63 ; Caldwell *v.* Walters, 6 Harris 82.

The husband is liable for medical attendance to the wife and for everything else necessary for her during coverture, unless the service rendered is on the credit of the wife and the husband is insolvent, and then it must be proved that the liability was incurred for necessaries and contracted by herself.

*F. F. Beltzhoover, W. F. Sadler* and *A. B. Sharpe*, for appellees.—The weight of the evidence sustained the report of the auditor, and the strict rule of Gamber *v.* Gamber, *supra*, does not apply to this case : Keichline *v.* Keichline, 4 P. F. Smith 75.

Eva Cart and her husband were competent under the Act of 9th of April 1870 : Taylor, Executor, *v.* Kelly, 3 Weekly Notes 206 ; Diehl *v.* Emig, 15 P. F. Smith 320 ; Bierly's Appeal, 3 Weekly Notes 210.

The personalty is the primary fund out of which the mortgage should be paid : Walker *v.* Johnson, 2 Atk. 624 ; Martin *v.* Fry, 17 S. & R. 429 ; Todd *v.* Todd's Executor, 1 Id. 457 ; Hoover *v.* Hoover, 5 Barr 356 ; Powell on Mortgages 780 ; Mason's Estate, 1 Pars. Eq. Cas. 131 ; Mansell's Estate, 1 Select Eq. Cases 367.

Where the bond given by a married woman is for purchase-money courts will enforce its payment : Patterson *v.* Robinson, 1 Casey 81 ; Conrad *v.* Shomo, 8 Wright 193 ; Heacock *v.* Fly, 2 Harris 540 ; Ramborger's Adm'r *v.* Ingraham, 2 Wright 146 ; Brunner's Appeal, 11 Id. 73.

The husband was notoriously insolvent, and to pursue him for this claim for medical services would have been fruitless.

Mr. Justice STERRETT delivered the opinion of the court, June 18th 1877.

The subjects of complaint in the first and fifth assignments of error are the surcharge of $2790, for government bonds and currency belonging to the estate, which came into the hands of the accountant; and the incompetency of Mr. and Mrs. Cart as witnesses to prove the possession and ownership of the bonds as part of the assets of the estate. The surcharge, and evidence in support of it, are so connected that they can be better considered together.

In 1871, letters of administration were issued to the appellant on the estate of his wife, Mary S. Sawtelle, who died intestate leaving an only daughter, Eva A. Richards, afterwards intermarried with J. J. Cart. About three years thereafter, the administrator presented an account, to which exceptions were filed on behalf of Mrs. Cart, and an auditor was appointed to pass upon the same, and make distribution. The exceptants alleged that Mrs. Sawtelle had in her own right $2000 in government bonds, and about $500 in currency, with which the accountant should be charged; and, on the hearing before the auditor, several witnesses were called for the purpose of showing that these bonds, as well as the money, belonged to and were in her possession at the time of her decease, and that they came into the hands of the accountant shortly afterwards. Among others, Mr. and Mrs. Cart were examined, and both testified to declarations and admissions of the appellant, in relation to the bonds and money, since the decease of his wife; but, in addition to this, Mrs. Cart testified to facts which occurred in the lifetime of her mother. The auditor surcharged the accountant with the value of the bonds, and the money, with interest thereon; and, after re-stating the account and distributing a portion of the fund to several creditors, he divided the residue equally between the accountant and Mrs. Cart. The report was confirmed and the administrator appealed from the decree. As already stated, the testimony of Mr. Cart was confined to what transpired after the decease of his mother-in-law, and for this he was clearly competent under the Act of 1870; but a portion of his wife's testimony related to matters which transpired during her mother's lifetime, tending to prove her possession and ownership of the bonds, and this is the only part of her testimony about which there appears to be any doubt as to her competency. The word " *actions*," as used in the *proviso* to the Act of 1869, was doubtless intended to embrace all forms of civil proceedings, as well as actions, technically so called, by or against executors,

[Sawtelle's Appeal.]

administrators or guardians.  The proceeding to surcharge the accountant, in this case, was against him as administrator, nominally at least, and therefore within the letter of the *proviso*.  Without pausing to inquire whether, according to the true intent and spirit of the act, Mrs. Cart was competent or not to prove facts which came to her knowledge during the lifetime of her mother, it is sufficient to say that we are not called upon to reverse, on this ground, if there was sufficient competent testimony before the auditor to sustain his finding, unless it is shown that he was led into some specific error by incompetent testimony.  In this respect, such pro-. ceedings before an auditor differ from common law actions; and, in appeals from decrees of the Orphans' Court it is our duty "to hear, try and determine the merits of such cases and decree according to the justice and equity thereof."

Leaving out of view then that portion of Mrs. Cart's testimony, which is claimed to be incompetent, was there sufficient other evidence, before the auditor, to sustain his finding as to the facts upon which the surcharge is based?  We think there was.  The proof of Mrs. Sawtelle's custody and ownership of the bonds, and the appellant's possession of them, after her decease, was clear and conclusive.  The testimony of Mrs. Doctor Hall, Mrs. Matcher and others, tended strongly to establish these facts.  In addition to this, there was the testimony of Mr. Cart and his wife, as to declarations and admissions of the accountant after the decease of his wife, as to which they were both clearly competent under the Act of 1870. Mrs. Cart testified that she saw the bonds, after her mother's death, in possession of the accountant.  She says, " He and I were talking and, in handling some other money, he took them out and said, they are yours." * * * " He told me that they were the same that mother had, and that they were to be kept for me."  Again, when he was about going to New York " he said he had them deposited and told me where to find the papers, showing where they were, in case anything happened him.  He told me the papers were in the legs of the boots he was wearing, and that I should be sure to get the boots." * * * " At the time I saw him on North street, he told me they were the bonds of my mother, and he frequently told me so.  He said he considered them mine and would never tread on them.  I frequently asked him for them, but he would always put me off to some other time, but he never gave them to me.  I have had conversations with him since my marriage to Mr. Cart, but he always bluffed me off.  Sometimes he said he had them in the safe, and at other times he denied that he had them."

This testimony and a great deal more of like character was before the auditor.  In arriving at his conclusions of fact he had no occasion to avail himself of that portion of Mrs. Cart's testimony which is specially objected to, and we infer from what is said in his report that in point of fact it was excluded from consideration.  There

was an abundance of evidence without it to justify all the conclusions of fact as to the bonds and money with which the accountant has been surcharged. While the learned counsel for the appellant admit that there was some competent evidence tending to sustain the finding of the auditor, they contend that it was insufficient in degree; that the exceptants were bound to prove ownership of the bonds in the intestate by evidence that did not admit of a reasonable doubt. They insist that the stringent rule of proof established in Gamber *v.* Gamber, 6 Harris 363, and kindred cases, in regard to contests between creditors and the wife of their debtor, as to property claimed by her, should be applied in cases like the present. We do not think so. The reasons for the rigid rule in the former class of cases do not exist in the latter, and in the absence of the special reasons upon which the rule they contend for is founded, cases like the present should stand upon the ordinary rule as to weight of evidence and degree of proof. In any aspect in which the testimony can fairly be viewed, the auditor and court were right in surcharging the accountant. The first and fifth assignments, therefore, are not sustained.

The Given mortgage, which is the subject of the second assignment, was not entitled to participate in the distribution. While it was doubtless a valid lien on the land embraced therein, it was not a personal obligation or an instrument on which an action could have been sustained against Mrs. Sawtelle personally, in her lifetime, nor against her administrator to charge her estate generally. The remedy of the mortgagee is against the land alone, and if he fails to obtain satisfaction from it he cannot, in any form of proceeding, resort to the estate of the mortgagor remaining in the hands of her administrator. For the same reason the judgment held by the First National Bank of Carlisle was not entitled to share in the distribution. The bond upon which the judgment was entered was void as a personal obligation, but having been given for purchase-money of real estate conveyed to her, the judgment against the land purchased is upheld and may be enforced on equitable grounds, to prevent the injustice of permitting her or her heirs to withhold the price and retain the land. The only recourse is against the land.

The claims of Dr. Dale and Mrs. Dr. Hall for medical attendance were also improperly allowed. It is very clear that if suit had been brought against Sawtelle and his wife, in her lifetime, for the purpose of charging her separate estate for the services rendered to her, the testimony adduced before the auditor would have been wholly insufficient. Instead of showing that they were rendered upon request of the wife, it appears that the husband himself employed one of the physicians, and as to the other there is no evidence on the subject. The act enables the wife to bind her separate estate for necessaries obtained for herself and family, but

[Sawtelle's Appeal.]

the very essence of the liability is that they are furnished at her request and on her credit. If not so furnished, her separate estate is not liable: Berger *v.* Clark, 29 P. F. Smith 340. The second, third and fourth assignments are therefore sustained.

> It is ordered, adjudged and decreed that so much of the decree of the Orphans' Court as determines the balance in the hands of the accountant for distribution be affirmed, and the residue of the decree be reversed and set aside; and it is now ordered and decreed that the said balance, viz., $2002.20, with interest from November 30th 1874, be equally divided between the appellant, N. H. Sawtelle, and Mrs. Eva A. Cart; and that the costs of the appeal be paid by the appellant.